**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| David Allen Winkle, | ) | No. CV-15-332-TUC-LAB |
| Petitioner, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| S. Lake, Warden | ) | |
| Respondent. | ) | |
| | ) | |

On July 27, 2015, David Allen Winkle, an inmate confined in the Federal Correctional Institution in Safford, AZ, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241.  (Doc. 1)  Winkle argues a 180-day Residential Reentry Center (RRC) placement prior to his release would be insufficient.  He believes an 11-month placement would be more appropriate.

Winkle filed a supplement to his petition on September 16, 2015.  (Doc. 12)  The respondent filed an answer on October 16, 2015. (Doc. 23) Winkle filed a combined reply and motion for summary judgment on November 9, 2015.  (Doc. 26)

Magistrate Judge Bowman presides over this action pursuant to 28 U.S.C. § 636(c). (Doc. 22)

The petition will be denied.  The Bureau of Prisons's decision making process was proper pursuant to 18 U.S.C. § 3621(b).

Background

Winkle was convicted in the U.S. District Court for the Western District of New York of conspiracy to distribute one hundred kilograms or more of marijuana. (Doc. 23-1, p. 2) The trial court sentenced Winkle to a 60-month term of imprisonment and 4 years of supervised release. *Id.* The Bureau of Prisons (BOP) projects Winkle will complete his sentence on October 17, 2016, assuming he earns all available good time credits. *Id.*, p. 5

On February 19, 2015, Winkle's case manager, Jeffery Smith, conducted an RRC placement assessment as mandated by the Second Chance Act of 2007. (Doc. 23-1, p. 3) Smith decided a 180-day placement in an RRC would be appropriate after considering the five factors described at 18 U.S.C. § 3621(b), which apply to all placement determinations. *Id.*; *see also Rodriguez v. Smith*, 541 F.3d 1180, 1186-87 (9th Cir. 2008). The Warden approved his recommendation on April 28, 2015. *Id.*

On July 7, 2015, Winkle filed the pending petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. 1) He filed a supplement on September 16, 2015. (Doc. 12)

Winkle claims (1) his Unit Team did not consider the five factors outlined in the Second Chance Act, (2) he was denied a "thorough and accurate individualized assessment of his transitional needs" as mandated by the Second Chance Act, (3) an 11-month RRC placement would improve his ability to successfully re-enter society due to his drug abuse history, and (4) an RRC placement would give him access to medical care that he cannot get at Safford and thus would reduce the likelihood of recidivism. (Doc. 1)

Winkle filed a supplement to his petition on September 16, 2015. (Doc. 12) He argues the BOP's recent recalculation of his sentence was done in retaliation for his filing this petition. *Id.*

On October 16, 2015, the respondent filed an answer arguing the petition should be denied for failure to exhaust administrative remedies or, in the alternative, on the merits. (Doc. 23) Winkle filed a combined reply and motion for summary judgment on November 9, 2015. (Doc. 26)

The court finds the petition should be denied on the merits. The court does not reach the respondent's alternative arguments.

Discussion

Pursuant to the Second Chance Act of 2007, the BOP:

> shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C.A. § 3624(c)(1).

A Residential Reentry Center (RRC), formerly known as a Community Corrections Center or half-way house, is a low security facility that provides services and training designed for inmates who are soon to be released. Under the Second Chance Act, prisoners are automatically reviewed for RRC placement "17-19 months before their projected release dates." *Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008).

When considering whether RRC placement is appropriate for a particular prisoner, the BOP must consider five factors:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

> (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C.A. § 3621(b).

In Claims (1) and (2), Winkle argues his Unit Team failed to consider the five statutory factors before concluding that a 180-day RRC placement prior to release would be sufficient. (Doc. 1, p. 4) Winkle believes an 11-month placement would be more appropriate. *Id.*

In fact, the Unit Team did consider the five statutory factors. (Doc. 23-1, pp. 3-5) The Team decided that placement in an RRC in Northern California would be appropriate because

1  Winkle has a sister living in the area. *Id*. The Team also considered the nature and

2  circumstances of Winkle's offense – conspiracy to distribute marijuana. *Id*. Because Winkle's

3  sentence, 60 months, is relatively short, the Team believed he would need fewer transitional

4  services than other inmates. *Id*. The Team concluded that a 180-day placement would strike

5  a good balance between Winkle's needs and the BOP's limited resources. *Id*.

6      The Team also considered Winkle's prisoner history. (Doc. 23-1, pp. 3-5) The Team

7  noted that Winkle participated in educational programs during his incarceration. *Id*. On the

8  other hand, Winkle has been disciplined for three incidents, "one of which was a greatest

9  severity prohibited act and another that was a high severity prohibited act." *Id*. "Winkle's

10 disciplinary history suggested caution in his placement recommendation, but it did not make

11 him inappropriate for community placement." *Id*. The Team further considered the trial court's

12 recommendation that Winkle serve his imprisonment as close as possible to Sheridan, Oregon.

13 *Id*.

14     The Unit Team met with Winkle on August 12, 2015 to discuss the recommendation and

15 give Winkle an opportunity to be heard on the issue. *Id*. Winkle argued that a longer RRC

16 placement would better accommodate his occupational training needs. *Id*. Case Manager

17 Smith, however, felt that Winkle's concerns did not justify a longer placement. *Id*. Contrary

18 to Winkle's argument, the BOP did consider the five statutory factors before deciding that

19 Winkle should be placed in an RRC for only 180 days.

20     In Claims (3) and (4), Winkle argues that his Unit Team failed to properly consider his

21 history of drug addiction or his medical condition. In essence, he argues that if the Unit Team

22 properly considered all of facts, it would have given him a longer placement term. The ultimate

23 placement decision, however, is a matter left to the discretion of the BOP. This court does not

24 have jurisdiction to second guess the BOP's final judgment. *Reeb v. Thomas*, 636 F.3d 1224,

25 1227 (9th Cir. 2011); *English v. Ives*, 2012 WL 4038495, at *6 (E.D. Cal. 2012).

26     In his supplemental pleading, Winkle claims the BOP improperly took 44 days of good

27 time credit away from him. (Doc. 12, p. 16) He argues the subsequent adjustment of his release

28 date "has been done as retaliation for my filing of administrative remedies and my §2241 now

before this court." *Id.*   Contrary to Winkle's argument, it appears that the BOP's revised sentence calculation was proper.

Winkle was sentenced on June 27, 2012.  (Doc. 23-2, pp. 2-4)  He was not, however, taken into custody immediately. *Id.*  He was permitted to self-surrender on August 9, 2012. *Id.*

The BOP originally calculated Winkle's sentence assuming it began on June 27, 2012, the sentencing date.  (Doc. 23-2, pp. 2-4)  That was error.  The correct commencement date for Winkle's sentence was August 9, 2012, the date he was taken into custody.  *Id.*; *see also* 18 U.S.C. § 3585.  Recently, the BOP caught this error and corrected Winkle's sentence calculation. *Id.*  Winkle's projected release date has been pushed back 43 days. *Id.*  Contrary to Winkle's assertion, this adjustment has nothing to do with his good time credits.

It appears that the new calculation is correct. *Id.*  Aside from Winkle's unsupported speculation, there is no indication that this new calculation was undertaken in retaliation for his filing this petition.

IT IS ORDERED that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed on July 27, 2015, is DENIED.  (Doc. 1)

IT IS FURTHER ORDERED that Winkle's motion for summary judgment, filed on November 9, 2015, is DENIED.  (Doc. 26)  Winkle is not entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a).

The Clerk is directed to prepare a judgment and close the case.

DATED this 4th day of January, 2016.

*Leslie A. Bowman*

Leslie A. Bowman
United States Magistrate Judge